[No. 34133.   *En Banc.*   February 14, 1957.]

THE STATE OF WASHINGTON, *on the Relation of the Washington State Sportsmen's Council, Inc., et al., Plaintiff, v.* EARL COE, *as Secretary of State, Respondent.*[1]

[1] Reported in 307 P. (2d) 279.

*Pebbles & Swanson,* for relators.

*The Attorney General* and *Douglas Hartwich, Assistant,* for respondent.

*Marshall McCormick, Frank L. Bannon,* and *Quinby R. Bingham, amici curiae.*

FOSTER, J.—Relators invoke the original jurisdiction of this court in mandamus to compel the secretary of state to accept the filing of an initiative petition to the legislature, which filing was refused by the secretary of state because it did not contain the number of signatures required by the thirtieth amendment to the Washington constitution.

Until December 6, 1956, the seventh amendment to the state constitution, the facilitating statute and amendments, Laws of 1913, chapter 138, p. 418 (Rem. Rev. Stat., §§ 5397 to 5428 [*cf.* RCW 29.79]), required only fifty thousand signatures on such petitions. In September of 1956, as required by law, relators filed five copies of proposed initiative No. 24 with the secretary of state, who gave it a serial number and transmitted a copy to the attorney general for the preparation of a ballot title.

When this was added, the petitions for signatures were circulated, and on January 4, 1957, relators offered such petitions, containing eighty-five thousand signatures, for filing with the secretary of state, which offer was rejected; whereupon this proceeding was instituted. At the bar, relators' counsel, with commendable candor, conceded that the petitions did not contain the requisite number of signatures if the thirtieth amendment applied.

Senate joint resolution No. 4 was passed at the 1955 session of the legislature submitting to the people at the general election of November, 1956, an amendment to the state constitution which, by express terms, superseded the seventh amendment. It was adopted at the general election November 6, 1956, and following the official canvass of votes, proclamation was made December 6, 1956, declaring the

amendment, set out in the margin,[2] adopted, and it now is the thirtieth amendment.

Simply stated, the only issue is: What was the law on January 4, 1957, when the petitions were offered for filing and rejected? Relators contend that, because in September, 1956, when they filed five copies of their proposals for the initiative in question, the constitution and facilitating statute required only fifty thousand signatures, the law in existence at that time controlled until the entire process was completed.

The relators state their contentions as follows:

"1. SJR 4 was intended, and the presumption is, to operate prospectively from its effective date of December 6, 1956. Since Initiative 24 was begun and in circulation prior to that date, SJR 4 does not apply.

"2. Regardless of whether SJR 4 was to act prospectively or retrospectively relators have certain rights that could not be taken from them under protection of the due process clauses of the state and federal constitutions.

"3. This court should be hesitant to construe SJR 4 so as to deprive the 85,806 signers of Initiative 24 and legal voters of this state and relators of their sovereign rights of the initiative process commenced by them long prior to the effective date of SJR 4."

The thirtieth amendment became effective upon the proclamation of December 6, 1956, and was in effect on January 4, 1957, when the petitions were offered for filing. By the plain terms of the thirtieth amendment, the seventh amendment is superseded and has been without force since December 6, 1956.

---

[2] "Hereafter, the number of valid signatures of legal voters required upon a petition for an initiative measure shall be equal to eight percentum of the number of voters registered and voting for the office of governor at the last preceding regular gubernatorial election. Hereafter, the number of valid signatures of legal voters required upon a petition for a referendum of an act of the legislature or any part thereof, shall be equal to four percentum of the number of voters registered and voting for the office of governor at the last preceding regular gubernatorial election. These provisions supersede the requirements specified in section 1 of this article as amended by the seventh amendment to the Constitution of this state."

■ The statute facilitating the operation of the seventh amendment, by which only fifty thousand signatures were required on initiative petitions, was likewise abrogated by the adoption of the thirtieth amendment. By a long series of cases, which are collected in *Duncan Township v. Stayr*, 106 Wash. 514, 521, 180 Pac. 476, it was held that territorial statutes in conflict with the state constitution, were abrogated by the adoption of the constitution. A constitutional amendment operates to repeal or supersede all statutes which are inconsistent with the full operation of a constitutional amendment. *Ladd & Tilton Bank v. Frawley*, 98 Ore. 241, 252; 193 Pac. 916; *Dawson v. Tobin*, 74 N. D. 713, 726, 24 N. W. (2d) 737; *Curators of Central College v. Rose*, (Mo.) 182 S. W. (2d) 145; *State ex rel. Dengel v. Hartmann*, 339 Mo. 200, 203, 96 S. W. (2d) 329; *Jelm v. Jelm*, 155 Ohio St. 226, 236, 98 N. E. (2d) 401, 22 A. L. R. (2d) 1300; 16 C. J. S. 134 § 43.

■ The petitions, when offered for filing January 4, 1957, did not contain the number of signatures required by the thirtieth amendment; consequently, the secretary of state could not accept them for filing, and his action in this respect was correct. This is not giving the thirtieth amendment a retrospective operation, as the petitioners claim, for such was the law at the time the petitions were offered for filing.

■ There is no question of the violation of any vested right guaranteed by the fourteenth amendment to the United States constitution. In *State ex rel. Harris v. Hinkle*, 130 Wash. 419, 434, 227 Pac. 861, it was held that no rights attached until the petitions were canvassed.

■ It is fundamental that no one can have a vested right in any general rule of law or policy of legislation which entitles him to insist that it remain unchanged for his benefit. *Curators of Central College v. Rose* (Mo.), 182 S. W. (2d) 145; *Rookledge v. Garwood*, 340 Mich. 444, 450; 65 N. W. (2d) 785; *People ex rel. Eitel v. Lindheimer*, 371 Ill. 367, 374, 21 N. E. (2d) 318, 124 A. L. R. 1472; *State ex rel. Sharpe v. Smith*, 58 S. D. 22, 234 N. W. 764; *Pinkham v.*

*Unborn Children of Jather Pinkham,* 227 N. C. 72, 40 S. E. (2d) 690; 16 C. J. S. 1182 § 223.

The order to show cause is dismissed and the writ denied.

HILL, C. J., MALLERY, SCHWELLENBACH, DONWORTH, FINLEY, ROSELLINI, and OTT, JJ., concur.